IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
December 8, 2020 Session

## SAMUEL LEE BACHELOR JR. v. AJA MICHELE BACHELOR N/K/A AJA MICHELE BURRELL

**Appeal from the Circuit Court for Shelby County**
**No. CT-004562-17   James F. Russell, Judge**

———————————————————

### No. W2020-00516-COA-R3-CV

———————————————————

This case involves a divorce that was granted in January, 2019. As a part of their divorce, the parties entered into a marital dissolution agreement which was thereafter incorporated into the final decree of divorce. Subsequently, the Appellant filed a petition for contempt, alleging that the Appellee was in noncompliance with his obligations under the marital dissolution agreement and requested, among other relief, attorney's fees for having to file the petition. The trial court found that while the Appellee had been noncompliant with the marital dissolution agreement, the noncompliance was not willful and therefore concluded that the Appellant was not entitled to attorney's fees. For the reasons stated herein, we reverse the trial court's decision to not award the Appellant her attorney's fees and additionally award the Appellant her attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in part and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Darrell D. Blanton, Memphis, Tennessee, for the appellant, Aja Michele Burrell.

Theresa H. Patterson, Memphis, Tennessee, for the appellee, Samuel Lee Bachelor, Jr.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Samuel Lee Bachelor, Jr. ("the Appellee") and Aja Michele Bachelor ("the Appellant") were married on July 13, 2010, in San Juan, Puerto Rico. The parties had no children and separated on or about October 10, 2017, in Shelby County, Tennessee. The

parties entered into a marital dissolution agreement ("MDA") which was incorporated by reference into the final decree of divorce that was entered on January 15, 2019.

This MDA set forth various obligations and responsibilities with which the parties were to comply. Specifically, the MDA provided for the following:

8. RETIREMENT ACCOUNTS. Wife shall be awarded as a division of marital property one-half of the value of Husband's Tennessee Consolidated Retirement Account as of the date of the Final Decree. Husband's counsel shall be responsible for the preparation of any documents necessary to divide the account. Such account shall be divided within sixty (60) days from the date of the Final Decree by entry of a Qualified Domestic Relations Order. Husband represents that he has not withdrawn from such account since the filing of the divorce. The parties shall share in the increase or decrease of said account up until the entry of the QDRO transferring Wife's interest to her. Both parties acknowledge that this is a monthly pension payable upon Husband's retirement and is not payable in lump sum unless he is no longer employed by Shelby County Schools System. In the event he receives a lump sum, Wife is entitled to her one-half on the day he receives such sum. Wife shall be awarded any and all pension and/or retirement accounts she has accrued during the marriage.

. . . .

10. HEALTH INSURANCE. Notice has been given to Wife, pursuant to T.C.A. § 56-7-2366, with regard to her medical (accident and sickness) insurance. Wife is presently covered on Husband's health and hospitalization through his employment with the Shelby County School System. Husband shall make COBRA coverage available to Wife. It is Wife's intent to obtain her own through her employment. When Wife obtains her own coverage through her employment, Husband shall be solely responsible for the payment of all premiums incident to her coverage with her employment and shall reimburse her such sum on a monthly basis, on or before the 15th day of each month, for all such premiums for a period of twelve (12) months from the date of the Final Decree, and Wife shall be solely responsible for all copayments, deductibles and all uncovered medical expenses of every kind or nature from the date of the Final Decree and thereafter. After the twelve (12) month period, Wife shall be solely responsible for all premiums for such coverage and for all uncovered medical, dental, ophthalmological, counseling expenses, medication, and any and all uncovered health care expenses.

11. ALIMONY. . . . Additionally, Husband shall maintain a life insurance

policy insuring his life in the sum of $110,000.00 term life as surety for the payment of such sum in the event of his untimely death prior to payment in full of the alimony in solido and the other debts assumed by him herein. Husband shall name Wife as sole irrevocable beneficiary until all alimony, debts, and other obligations assumed by him are paid in full. Husband shall provide proof of such coverage on the date of entry of the Final Decree and shall provide annual proof thereafter on each date of the anniversary of the entry of the Final Decree. *The initial proof of coverage shall include a complete copy of the life insurance policy together with the face page confirming Wife as sole irrevocable beneficiary and confirming the face amount.* The annual proof of continuing coverage shall include a true and correct copy of an update declaration page reflecting Wife as sole irrevocable beneficiary as well as the verification of the coverage amount.

(emphasis added).

On April 11, 2019, the Appellant filed a petition for civil contempt against the Appellee, asserting that the Appellee was in willful noncompliance with the MDA, in that the Appellee:

> failed to provide proof of a life insurance policy on [the Appellee's] life in the amount of no less than $110,000.00; and has failed to show proof that [she] is named as the sole irrevocable beneficiary. [He] has further failed to provide proof of such coverage as ordered in the Final Decree of Divorce.
> ….
> [He] failed to reimburse [the Appellant] the premium cost for all months since the Final Decree of Divorce.
> ….
> [And finally, he] failed to provide the Qualified Domestic Relations Order as ordered by this Court.

The Appellant also claimed that the Appellee failed to pay the sum of $3,500.00 to her as was mandated by the trial court in an order on the divorce referee's ruling, which payment was to be made directly to the Appellant and used towards her attorney's fees. The Appellee filed a response to the motion, denying that he "willfully disobeyed" the trial court's order, instead asserting that he "provided proof of life insurance coverage by providing [the Appellant] with documentation that she is the named beneficiary of the group life insurance policy" as well as proof that the Appellant "is currently the beneficiary of $175,000 of life insurance coverage." The Appellee also denied the Appellant's allegation that he failed to reimburse her for the premium cost for insurance since the final decree of divorce was entered, and he stated that his counsel had emailed a proposed Qualified Domestic Relations Order ("QDRO") to the Appellant's counsel, who never responded. Finally, as to the $3,500.00 payment, the Appellee stated that he came to an

agreement to pay the fees directly to the Appellant's attorney at the time. Upon learning that the Appellant had fired her previous attorney, the Appellee asserted that he instead made the payments to the Appellant directly, and all sums due have now been paid. However, the Appellee did note that, contrary to the requirements set forth by the MDA, "[the Appellee] has never been provided with an actual policy and face page, only confirmation of benefits, which has been provided to [the Appellant.]"

The parties convened for a hearing on February 21, 2020, after which the trial court entered an order denying the Appellant's petition for civil contempt. In its order, the trial court noted that it was "abundantly clear that there was no full and accurate compliance on behalf of [the Appellee], with the terms of the agreement at the time the petition was filed." However, the trial court concluded that, because the Appellee had not "willfully and/or intentionally violated" the court's orders, he could not be found in civil contempt. Thus, the trial court found that the Appellee was the "prevailing party" in the matter and therefore could not be made to pay the Appellant's attorney's fees. The Appellant thereafter filed a timely notice of appeal with this Court.

## ISSUES PRESENTED

The Appellant raises two issues for our review on appeal:[1]

1. Whether the trial court erred in not awarding the Appellant her attorney's fees as provided for in the MDA.
2. Whether the Appellant is entitled to attorney's fees for this appeal.

## STANDARD OF REVIEW

The present case concerns the issue of whether the trial court erred in failing to award the Appellant attorney's fees under the language of the parties' MDA. This presents a question of law and "[a]ccordingly, our review is *de novo* with no presumption of correctness." *Eberbach v. Eberbach*, 535 S.W.3d 467, 473 (Tenn. 2017) (citing *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006)).

## DISCUSSION

*Whether the Trial Court Erred in Failing to Award the Appellant Attorney's Fees*

Tennessee follows the "American Rule" regarding attorney's fees. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). The "American Rule"

---

[1] The trial court's ultimate ruling on the contempt petition is not being challenged on appeal, only its failure to award Appellant her attorney's fees for the necessity of having to file the petition to enforce the MDA.

provides that "a party in a civil action may recover attorney's fees only if: (1) a contractual or statutory provision creates a right to recover attorney's fees; or (2) some other recognized exception to the American Rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citing *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005)). Otherwise, litigants are personally responsible for their own attorney's fees. *Id*. at 309 (citing *House v. Estate of Edmondson*, 245 S.W.3d 372, 377 (Tenn. 2008)).

A marital dissolution agreement is a contract entered into by married parties in contemplation of a divorce. *Id*. at 474 (citing *Barnes*, 193 S.W. 3d at 498). Therefore, as a contract, the MDA is generally "subject to the rules governing construction of contracts." *Id*. If an MDA is approved by the trial court, it is thereafter incorporated into the parties' final decree of divorce. *Id*. (citing Tenn. Code Ann. § 36-4-103(b)). Issues and obligations contained within the MDA which are governed by statutes "lose their contractual nature and become a judgment of the court." *Id*. (citing *Towner v. Towner*, 858 S.W.2d 999, 890 (Tenn. 1993)). "The trial court retains the power and discretion to modify terms contained in the MDA relating to these statutory issues upon sufficient changes in the parties' factual circumstances." *Id*. (citing *Archer v. Archer*, 907 S.W.2d 412, 418 (Tenn. Ct. App. 1995)). However, it bears noting that, "on issues other than child support during minority and alimony, the MDA retains its contractual nature." *Id*. (citing *Towner*, 858 S.W.2d at 890). Therefore, "a MDA may include enforceable contractual provisions regarding an award of attorney's fees in post-divorce legal proceedings." *Id*.

In *Eberbach v. Eberbach*, the Tennessee Supreme Court confronted the issue of attorney's fees as they relate to MDAs. There, the Court specifically noted Tennessee courts' history in observing that, at the trial court level, parties are contractually entitled to recover reasonable attorney's fees provided there is an agreement providing for such relief. *See Eberbach*, 535 S.W.3d at 478 (citing *Seals v. Life Inv'rs Ins. Co. of Am.*, No. M2002-01753-COA-R3-CV, 2003 WL 23093844, at *4 (Tenn. Ct. App. Dec. 30, 2003)) (stating that attorney's fees could be awarded to a "prevailing party" where the parties' agreement has provided for such an award to a "prevailing party"). In such cases, the trial court may not use its discretion to "set aside the parties' agreement and supplant it with its own judgment." *Id*. (citing *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005)). Instead, the trial court may only use its discretion in determining the amount of attorney's fees that it finds reasonable under the circumstances. *Id*. (citing *Hosier v. Crye-Leike Commercial, Inc.*, No. M2000-01182-COA-R3-CV, 2001 WL 799740, at *6 (Tenn. Ct. App. July 17, 2001)). This notion is also applicable to the appellate courts. *Id*. Therefore, absent mistake, fraud, or another defect, courts must interpret contracts as they are written, giving the language a "natural meaning." *Id*. (citing *U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386-87 (Tenn. 2009)).

Turning to the instant case, the Appellant argues that the trial court erred in denying her an award of attorney's fees due to what she asserts is the Appellee's noncompliance

with the terms set forth in the MDA. In support of this contention, the Appellant cites a specific provision in the MDA which provides:

> (f) Should either party incur any expense or legal fees as a result of the breach or noncompliance of this Agreement, should either party be caused to file a petition for specific enforcement and/or contempt of court relative to this Agreement, or should either party otherwise be caused to litigate to collect from a party, estate, or third party any sums or property to be transferred or received herein consistent with any portion of this Agreement, whether contractual or otherwise, the Court shall award all reasonable attorney fees and suit expenses to the non-defaulting party, after such hearing and upon appeal. No breach, waiver, or default of any of the terms of this Agreement shall constitute a waiver of any subsequent breach or default of any of the terms of this Agreement.
>
> No modification or waiver of any of the terms hereof shall be valid, unless in writing and signed by both of the parties. No waiver of any breach hereof or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

Based on this provision in the MDA, the Appellant contends that, because the Appellee defaulted on his obligations and she was required to file a petition to enforce the agreement, she is entitled to attorney's fees incurred as a result of his noncompliance, irrespective of his intent.

Upon reviewing the record, we conclude that the trial court's disposition on the matter of attorney's fees under the provisions of the MDA was in error. In its order, the trial court concluded that the Appellant was not owed attorney's fees as she was not the "prevailing party" in the petition for contempt. However, in this same order, the trial court also concluded that "[f]rom the evidence before the court, it is abundantly clear that there was no full and accurate compliance on behalf of [the Appellee], with the terms of the agreement at the time the petition was filed; specifically with respect to the life insurance, the qualified domestic relations order, and the attorney fees subsequent to or pursuant to the pendente lite phase in this case in the amount of $3,500." Despite clearly finding that the Appellee was not in compliance with the terms of the MDA, the trial court found that because the Appellee "[had] not willfully and/or intentionally violated the orders of this court" and could not be found in civil contempt, an award of attorney's fees was not appropriate. Specifically, the trial court determined that the Appellee was the prevailing party and, under this theory, declined to award the Appellant her attorney's fees. Respectfully, we find this conclusion to be in conflict with the clear and unambiguous language of the parties' MDA. The language in the MDA in this case expressly provides, in pertinent part, that, ". . . the Court shall award all reasonable attorney fees and suit expenses to the **non-defaulting** party, after such hearing and upon appeal." (emphasis

added). Furthermore, as we noted earlier, the Tennessee Supreme Court has made clear in *Eberbach* that "on issues other than child support during minority and alimony, the MDA retains its contractual nature." *Eberbach*, 535 S.W.3d at 474 (citing *Towner*, 858 S.W.2d at 890). As such, the dispositive question here is whether a party to the MDA has defaulted on their obligations in such a manner as to cause the opposing party to

> incur any expense or legal fees as a result of the breach or noncompliance of this Agreement . . . to file a Petition for specific enforcement and/or contempt of court relative to this Agreement, or . . . to litigate to collect from a party, estate, or third party any sums or property to be transferred or received herein consistent with any portion of this Agreement

and is therefore obligated to pay "all reasonable attorney fees and suit expenses to the non-defaulting party." The trial court, in its order, found that "it is abundantly clear that there was no full and accurate compliance on behalf of [the Appellee], with the terms of the agreement at the time the petition was filed." Therefore, as the Appellee was not in compliance as required by the MDA, he was effectively in default. As a result of the Appellee's noncompliance, the Appellant incurred legal fees in filing her petition to enforce her rights under the MDA and, according to the clear language of the MDA, was entitled to her attorney's fees.

Nevertheless, the Appellee's brief sets forth two arguments as to why the trial court's disposition was ultimately correct. Specifically, the Appellee asserts that the Appellant was in default under the MDA and therefore not due any award of attorney's fees, and he also argues that he was in substantial compliance with the MDA, such that any award of attorney's fees would contravene the intent of the parties set forth in the MDA. We will address each of these contentions separately.

First, the Appellee contends in his brief that the Appellant was in default under the MDA and is therefore not permitted to recover her attorney's fees under the MDA. In support of this, the Appellee notes the Appellant's failure to submit a timely response to the Appellee's draft of the QDRO as evidence of her default. Although the Appellee referenced this matter in his response to the Appellant's petition for contempt, he never affirmatively asserted in any pleading filed in the trial court that the Appellant was in default under the MDA, nor was the issue ever argued before the trial court. As a result, we deem this issue to be waived on appeal. *See* Tenn. R. App. P. 36(a); *Watson v. Watson*, 309 S.W.3d 483, 497 (Tenn. Ct. App 2009) (citing Tenn. R. App. 36(a); *Alexander v. Armentrout*, 24 S.W.3d 267, 272 (Tenn. 2000)).[2]

---

[2] Moreover, the Appellant's alleged default under the MDA was also not raised as an issue on appeal in the Appellee's brief. In his brief, the Appellee specifically adopts the Appellant's statement of the issues for purposes of this appeal.

Second, the Appellee also maintains that he was in "substantial compliance" with the provisions of the MDA when the Appellant filed her petition for contempt and, as such, should not be obligated to pay the Appellant's attorney's fees. We find this argument to be unconvincing as we do not find the doctrine of substantial compliance applicable in this matter. Under Tennessee law,

> [s]ubstantial performance [of a contract] is said to exist "where there has been no willful departure from the terms of the contract, and no omission in essential points, and it has been honestly and faithfully performed in its material and substantial particulars," and the only variance from the strict and literal performance consists of "technical or unimportant omissions or defects."

*Farmers Mutual of Tenn. v. Atkins*, No. E2014-00554-COA-R3-CV, 2014 WL 7143292, at *9 (Tenn. Ct. App. Dec. 15, 2014) (quoting *Interstate Bldg. Corp. v. Hills*, 66 S.W.2d 597, 598 (Tenn. Ct. App. 1933)). Here, the parties agreed to the MDA's provisions which were later incorporated into the final decree of divorce. As evidenced by the Appellant's petition for contempt and the trial court's order noting the Appellee's noncompliance, the Appellee failed to uphold his obligations at the time of the Appellant's filing. Specifically, the trial court concluded that the Appellee failed to comply "with the terms of the agreement at the time the petition was filed; specifically with respect to the life insurance, the qualified domestic relations order, and the attorney fees subsequent to or pursuant to the pendente lite phase in this case in the amount of $3,500." We do not regard this as being merely a "technical or unimportant omission[] or defect." *Id*. Rather, as is clear from the trial court's findings, the Appellee was not compliant with several of the MDA's provisions, which necessitated the Appellant's filing of her petition. As we perceive it, this is a clear breach of a contractual provision agreed to by the parties and as such, the Appellant was owed fees pursuant to the MDA's provision which specifically states,

> [s]hould either party incur any expense or legal fees as a result of the breach or noncompliance of this Agreement, **should either party be caused to file a Petition for specific enforcement and/or contempt of court relative to this Agreement**, or should either party otherwise be caused to litigate to collect from a party, estate, or third party any sums or property to be transferred or received herein consistent with any portion of this Agreement, whether contractual or otherwise, the Court shall award all reasonable attorney fees and suit expenses to the non-defaulting party, after such hearing and upon appeal. No breach, waiver, or default of any of the terms of this Agreement shall constitute a waiver of any subsequent breach or default of any of the terms of this agreement.

(emphasis added). Here, the Appellant filed her petition for contempt in order to enforce her contractual rights afforded to her under the provisions of the MDA. Although the

Appellee maintains that he was in compliance with the MDA such that the Appellant's need to file her petition for contempt was obviated, we note again that the trial court found that the Appellee was in noncompliance with the MDA at the time the Appellant's petition was filed. Therefore, it is reasonable under the MDA's provisions that the Appellant would file a petition to seek compliance and for contempt, and thus incur attorney's fees, in order to enforce her contractual rights. As such, any arguments that awarding the Appellant attorney's fees would contravene the intent of the MDA are without merit. Instead, we find that an award of attorney's fees in this case clearly carries out the parties' stated intent in the MDA, as it states that the defaulting party should be required to pay the attorney's fees of the non-defaulting party who incurred fees and expenses due to noncompliance or a breach.

*Whether the Appellant is Entitled to Attorney's Fees on Appeal*

In *Eberbach*, the Tennessee Supreme Court made clear that the contractual principles to be applied at the trial court level must also be applied at the appellate court level. Specifically, the Court noted that

> we hold that the Court of Appeals has no discretion whether to award attorney's fees when the parties have a valid and enforceable marital dissolution agreement which requires an award of reasonable attorney's fees to a prevailing or successful party. When such an MDA exists, it is subject to the normal rules of contractual interpretation and enforcement. **If the MDA is determined to be a valid and enforceable agreement, the terms of the parties' agreement govern the award of fees, and the court must enforce the parties' terms to the extent the agreement demands**.

*Eberbach*, 535 S.W.3d, at 478 (emphasis added).

Therefore, as we concluded that the Appellant was entitled to attorney's fees at the trial court level, we similarly conclude, based on the Tennessee Supreme Court's language in *Eberbach*, that the Appellant should be awarded her attorney's fees on appeal.

## CONCLUSION

Based on the foregoing, we reverse that portion of the trial court's order denying the Appellant her attorney's fees, and remand for the trial court to award the Appellant her reasonable attorney's fees incurred in this case in the trial court as well as to determine her reasonable attorney's fees incurred on appeal.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE